UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)   Criminal No. 19-0082 (PLF)<br>DEMETRIUS MCMILLAN, )<br>)<br>Defendant. )<br>) | |

MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant Demetrius McMillan's Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). Motion for Compassionate Release ("Def.'s Mot.") [Dkt. No. 31]. Mr. McMillan contends that he is at a high risk of contracting the novel coronavirus ("COVID-19") and requests compassionate release pursuant to the First Step Act of 2018. Id. ¶¶ 3-5. The government opposes the motion, arguing that Mr. McMillan's medical conditions do not demonstrate extraordinary and compelling circumstances warranting a sentence reduction, and that the sentencing factors set forth in 18 U.S.C. § 3553 strongly weigh against his release. United States' Opposition to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and Defendant's Request for Assistance in Causing the Bureau of Prisons to Process a Transfer to Home Confinement ("Gov't Opp.") [Dkt. No. 32] at 19-24. For the reasons that follow, the Court will deny Mr. McMillan's motion without prejudice.[1]

---

[1] The Court has reviewed the following documents in connection with the pending motion: Information as to Demetrius McMillan ("Information") [Dkt. No. 2]; Plea Agreement as to Demetrius McMillan ("Plea Agmt.") [Dkt. No. 3]; Statement of Offense ("SOO") [Dkt. No. 4]; Judgment as to Demetrius McMillan ("Judgment") [Dkt. No. 25]; Transcript of

I.  BACKGROUND

Between April 3, 2018 and July 25, 2018, defendant Demetrius McMillan, in his capacity as a Social Service Representative for the Temporary Assistance for Needy Families ("TANF") program, employed by the District of Columbia Department of Human Services, authorized approximately 779 fraudulent Supplemental Nutrition Assistance Program ("SNAP") payments to 305 beneficiaries, with payments totaling over $1.4 million.  SOO ¶ 8.  Mr. McMillan was to receive approximately $1,000 from each fraudulent payment in exchange for authorizing the payments in the beneficiary's name.  Id.  He in fact received at least $150,000 as a result of the fraudulent activity.  Id. ¶¶ 8, 12.  In addition, between April and July, Mr. McMillan solicited and accepted sexual favors from a number of female beneficiaries in exchange for authorizing payments in their names.  Id. ¶ 13.

On February 27, 2019, Mr. McMillan pled guilty to one count of Bribery of a Public Official.  Plea Agmt. ¶ 1.  On July 17, 2019, this Court sentenced Mr. McMillan to eighty-four months of incarceration, Sentencing Hr'g Tr. at 33; Judgment at 2, of which he has served approximately ten months, see Gov't Opp. at 2.  Mr. McMillan is currently serving his sentence at FCI Butner Low ("FCI Butner").  Gov't Opp. at 2.

On April 7, 2020, Mr. McMillan filed an administrative request for release to home confinement with the Bureau of Prisons ("BOP"), Gov't Opp. at 3, as required by statute, see 18 U.S.C. § 3582(c)(1)(A).  The warden of FCI Butner approved the request on

---

Sentencing Hearing ("Sentencing Hr'g Tr.") [Dkt. No. 27]; Def.'s Mot.; Gov't Opp.; Supplement to Defendant's Motion ("Def.'s Suppl.") [Dkt. No. 33]; Reply Memorandum in Further Support of Defendant's Motion ("Def.'s Reply") [Dkt. No. 34]; Bureau of Prisons Response to Reduction in Sentence Request ("BOP Resp.") [Dkt. No. 35]; and United States' Supplemental Opposition to Defendant's Motion ("Gov't Suppl. Opp.") [Dkt. No. 36].

2

April 17, 2020, but subsequently revoked it three days later because Mr. McMillan had not yet served half of his sentence. Def.'s Mot. ¶ 2. Mr. McMillan then filed a revised request for a reduction in sentence on May 8, 2020, see Def.'s Suppl. ¶ 1, which was denied on May 22, 2020, see BOP Resp. at 1.

Mr. McMillan, now fifty years old, suffers from "malignant hypertensive heart disease, respiratory abnormalities, chronic kidney disease, and congestive heart failure." Def.'s Mot. ¶ 3. As cited by the government on June 8, 2020, the BOP reported as many as 541 active COVID-19 cases in FCI Butner, ten of which have resulted in death. See Gov't Suppl. Mot. at 12 n.6. As of July 16, 2020, the BOP website reports that 418 inmates and one staff member at FCI Butner have tested positive for the virus. COVID-19 Cases, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/. Mr. McMillan now moves this Court pursuant to 18 U.S.C. § 3582(c)(1)(A) for compassionate release.

## II.  LEGAL STANDARD

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed . . . but the rule of finality is subject to a few narrow exceptions." Freeman v. United States, 564 U.S. 522, 526 (2011) (internal quotation marks and citation omitted). One such exception is codified as 18 U.S.C. § 3582(c)(1)(A). As modified by the First Step Act in 2018, Section 3582(c)(1)(A) allows courts to modify a sentence upon motion by a defendant once he has "fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request." 18 U.S.C. § 3582(c)(1)(A). As stated, Mr. McMillan's multiple requests to the BOP were denied; he has, therefore, exhausted his administrative remedies.

3

Once the exhaustion requirement has been met, a defendant must show that "extraordinary and compelling reasons warrant such a reduction," and that a sentence reduction is "consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  The Sentencing Commission has stated that "extraordinary and compelling reasons" exist where the defendant is "suffering from a serious physical or mental condition" or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), (III).  The Sentencing Commission has acknowledged, however, that there may be "[o]ther [r]easons" presenting "an extraordinary and compelling reason other than, or in combination with, the reasons described" elsewhere in the commentary.  United States v. Morris, 2020 U.S. Dist. LEXIS 91040 at *20 (D.D.C. May 24, 2020) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)).  To that end, the COVID-19 pandemic falls under such an "other reason" that may present an "extraordinary and compelling reason" for a sentence reduction.  United States v. Morris, 2020 U.S. Dist. LEXIS 91040, at *20.

The statute and the policy statement further instruct the Court to consider the sentencing factors set out in 18 U.S.C. § 3553(a) "to the extent that they are applicable."  U.S.S.G. § 1B1.13; see also 18 U.S.C. § 3582(c)(1)(A).  As relevant here, the factors listed in Section 3553(a) include "the nature and circumstances of the offense" and "the need for the sentence imposed, to reflect the seriousness of the offense, and . . . to afford adequate deterrence to criminal conduct."  18 U.S.C. § 3553(a)(1)-(2)(B).  The Court must consider these factors "with an eye toward whether it is necessary to maintain the prior term of imprisonment despite

the extraordinary and compelling reasons to modify the defendant's sentence." United States v. Johnson, Criminal No. 15-125, 2020, U.S. Dist. LEXIS 86309, at *13 (D.D.C. May 16, 2020).

### III.  DISCUSSION

Despite Mr. McMillan's serious illnesses, which may increase his likelihood of contracting COVID-19, his individual circumstances do not warrant a sentence reduction at this time.

As noted, Mr. McMillan is fifty years old; he suffers from malignant hypertensive heart disease, respiratory abnormalities, chronic kidney disease, and congestive heart failure. Def.'s Mot. ¶ 3.  While the government concedes that an inmate's "chronic medical condition that has been identified by the CDC as elevating an inmate's risk of becoming seriously ill from COVID-19 . . . may satisfy the standard of extraordinary and compelling reasons," it argues that Mr. McMillan's conditions, standing alone, do not establish extraordinary and compelling reasons for a sentence reduction because he "has provided no documentation for his asserted medical conditions" and "[n]one of the conditions asserted in Defendant's Motion have been identified by the CDC as increasing a person's risk for developing serious illness from COVID-19."  Gov't Opp. at 21-22 (internal quotations and footnote omitted).  According to the CDC, serious heart conditions place individuals at a higher risk for contracting COVID-19.  See Groups at Higher Risk for Severe Illness, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Malignant hypertensive heart disease and congestive heart failure may be considered "serious heart conditions" that the CDC recognizes place individuals at a higher risk for contracting the potentially deadly virus.  Despite the government's contention that Mr. McMillan has not shown that he currently suffers from any of the relevant conditions, the potential for serious illness may

5

be quite high given Mr. McMillan's health history and the fact that FCI Butner has had over 500 confirmed cases of the virus, culminating in nearly a dozen deaths.

Nevertheless, while these numbers are far from insignificant and Mr. McMillan's conditions may rise to the level of extraordinary and compelling reasons for his release, the Court concludes that reducing his sentence at this time would be inconsistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). While remaining quarantined plays an essential role in managing Mr. McMillan's health in light of COVID-19, the "nature and circumstances of the offense" and "the need for the sentence imposed, to reflect the seriousness of the offense, and . . . to afford adequate deterrence to criminal conduct" outweigh the potential health risks posed by maintaining his original sentence. See 18 U.S.C. § 3553(a)(2); U.S.S.G. § 1B1.13. Mr. McMillan pled guilty to one count of Bribery of a Public Official, Plea Agmt. ¶ 1, which included the payment to him of at least $150,000 and his acceptance of sexual favors as a form of payment, SOO ¶¶ 12-13. The Court is loath to reduce Mr. McMillan's sentence at this time because of the nature and circumstances of the offense given "the number of individuals that [Mr. McMillan] approached [and] targeted . . . in such a short period of time," and the fact that Mr. McMillan worked "in an office whose mission in life was to help the poor." Sentencing Hr'g Tr. at 28-29. By manipulating beneficiaries in order to serve his own desires, Mr. McMillan jeopardized a system on which marginalized communities consistently rely. This grave abuse of his authority can only be remedied by holding him accountable for his actions.

The appropriateness of the sentence imposed in order to reflect the seriousness of the offense further counsels against a sentence reduction. The Court did not impose a Guidelines sentence – which would have been between 108 and 135 months, Sentencing Hr'g Tr. at 6; rather, it varied downward from the Sentencing Guidelines and imposed a sentence of eighty-

four months to reflect the seriousness of the offense, Sentencing Hr'g Tr. at 33.  The goals of incarceration would not be served by reducing Mr. McMillan's sentence in view of the fact that he has only served ten months – approximately twelve percent – of his original sentence.  As a public official with a duty to provide relief to economically disadvantaged members of his community, Mr. McMillan took advantage of his constituents' vulnerabilities.  Stealing from citizens is completely antithetical to the type of community building that programs like SNAP and TANF are meant to encourage, and such insidious actions warrant that Mr. McMillan serve at least a substantial part of his sentence.

Finally, maintaining the original sentence is also necessary in order to deter other government employees from engaging in similar criminal behavior.  As the Court noted at sentencing, public employees must realize that "when you steal, when you line your own pockets, whatever the motivation and whatever the financial need, it has serious consequences." Sentencing Hr'g Tr. at 32.  For these reasons, the sentencing factors set forth in Section 3553(a) strongly favor maintaining the prior term of imprisonment despite any potential extraordinary and compelling reasons for release.

Having found Mr. McMillan's request for compassionate release to be inconsistent with the sentencing factors identified in Section 3553(a), the Court will deny his motion for compassionate release.  For the foregoing reasons, it is hereby

ORDERED that defendant's Motion for Compassionate Release [Dkt. No. 31] is DENIED without prejudice.

SO ORDERED.

/s/
_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  July 17, 2020